UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT A. ONTIVEROS,<br>　　　　Petitioner,<br>　　v.<br>RALPH DIAZ,<br>　　　　Respondent. | Case No. 19-cv-05662-EMC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.   INTRODUCTION

Albert Ontiveros filed this *pro se* action for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a time-credit decision in prison. For the reasons explained below, the petition will be denied.

## II.   BACKGROUND

The petition in this action presents an unusual claim. In a nutshell, Mr. Ontiveros was found guilty of a disciplinary offense in 2011 and received discipline that included a loss of time credits. Mr. Ontiveros does not challenge the disciplinary decision and instead claims that his constitutional rights were violated because prison officials delayed six years before entering the loss of time credits into his prison records.

Mr. Ontiveros is serving a sentence of 13 years, eight months imposed by the Alameda County Superior Court on August 23, 2010. Docket No. 1 at 1.

Mr. Ontiveros received a CDC-115 (also known as a rule violation report) charging that he was in possession of a controlled substance (marijuana) on October 12, 2010. Docket No. 1-1 at 9. A disciplinary hearing was held on January 4, 2011. Docket No. 18 at 4. Mr. Ontiveros was

found guilty of violating California Code of Regulations Title 15 section 3016(a), which prohibits the possession of marijuana. Docket No. 18 at 4. The "Disposition" section of the CDC-115 stated: "Per CCR 3323(d)(6)(A), assessed a 130-day credit forfeiture for this Div. B. offense. Per CCR 3327(a)(1), credit restoration is not available for this offense." Docket No. 18 at 5.

Mr. Ontiveros appeared before an Institutional Classification Committee (ICC) for a periodic review of his administrative segregation placement on April 20, 2011. Docket No. 1-1 at 13. The ICC's memorandum stated that Mr. Ontiveros had been in administrative segregation for several months "pending validation" as an affiliate of a prison gang and that, going forward, he would be retained in the security housing unit on an indeterminate basis because he recently had been validated as an associate of a prison gang. *Id.* The ICC's memorandum does not mention the CDC-115 or the loss of time credits.[1]

There is no evidence that Mr. Ontiveros appealed from the disciplinary decision regarding the merits of the CDC-115 decision or the discipline imposed after he was found guilty.

On January 31, 2017, prison officials "applied" a credit loss of 130 days on the Legal Status Summary for Mr. Ontiveros to reflect the 130-day loss of credits that had been imposed as a penalty in the 2011 disciplinary proceedings. *See* Docket No. 1-1 at 7. The Legal Status Summary is a document that shows the prisoner's sentence, parole eligibility date, and "credits received/lost."

Several months later, in July 2017, Mr. Ontiveros received a "Release Date Change Notice" reflecting that the 130-day loss of credits made his release date later than expected. Docket No. 1 at 7; Docket No. 1-1 at 16. Mr. Ontiveros inquired about the later release date; a prison official responded that the 130 days of time credits lost at the 2011 disciplinary proceeding had been "applied" when his file was reviewed in 2017 after he was released from the Pelican Bay

---

[1] In his petition, Mr. Ontiveros contended that a department rule provided that the ICC was supposed to address the time credit loss at the next ICC following a disciplinary hearing, and presents an undated copy of a Department Operations Manual that requires the ICC to "[a]ffirm, disallow, or modify the credit loss action of a disciplinary hearing" at the next ICC following a disciplinary hearing. *See* Docket No. 1 at 7; Docket No. 1-1 at 11. In the order to show cause, the Court dismissed Mr. Ontiveros' claim that the CDCR had failed to comply with the prison rules because it was a claim for a state law error and therefore not cognizable in a federal habeas action. Docket No. 10 at 2.

2

1 SHU and was transferred to San Quentin. *See* Docket No. 1-1 at 16.

2 Mr. Ontiveros filed unsuccessful petitions for writ of habeas corpus in the California courts challenging the disciplinary decision. The California Supreme Court denied the habeas petition with a citation to *In re Dexter*, 25 Cal. 3d 921, 925-26 (Cal. 1979), which stands for a rejection due to a petitioner's failure to exhaust administrative remedies before filing his state habeas petition. *See* Docket No. 14-6 at 2.

Mr. Ontiveros then filed this action. This Court reviewed the petition, dismissed a claim for a state law error, and ordered Respondent to respond to two constitutional claims that did "not appear to be patently meritless." Docket No. 10 at 3. Those constitutional claims were that "the taking of time credits six years after the disciplinary hearing violates due process" and violates Mr. Ontiveros' "right to equal protection because other inmates did not experience such a delay in having their time credits taken away." *Id.* Respondent has filed an answer and Mr. Ontiveros has filed a traverse. At the Court's request, Respondent filed a complete copy of the CDC-115 for the 2011 disciplinary proceeding. *See* Docket Nos. 17, 18. The matter is now ready for decision.

### III. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 is the proper jurisdictional basis for a habeas petition attacking the execution of a sentence by a petitioner in custody pursuant to the judgment of a state court. *See White v. Lambert*, 370 F.3d 1002, 1004 (9th Cir. 2004), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546, 554 (9th Cir. 2010).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

3

1  the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

2  Where the state court has rejected a claim on procedural grounds, rather than on the merits, the deferential standard of review in 28 U.S.C. § 2254(d) does not always apply. If a federal court concludes that an asserted procedural bar was not an independent and adequate ground for the state court's rejection of the claim, the federal court must consider the claim on the merits; if the state courts never reached the merits of the claim, there is no state court decision to which to defer and the federal court must review the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002).

## IV.  DISCUSSION

A.  Equal Protection Claim

Mr. Ontiveros alleges in his petition that his right to equal protection of the laws was violated because other prisoners did not experience delays in having time credits forfeited. Respondent argues that this claim was unexhausted because it was not presented to the California Supreme Court before being presented in the federal petition for writ of habeas corpus, and therefore cannot support federal habeas relief. Mr. Ontiveros does not dispute Respondent's assertion and instead states that he "waives" his equal protection claim to avoid further delay in resolution of this action that would be necessary for him to exhaust state court remedies for that claim. *See* Docket No. 15 at 2.

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state court remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982). This exhaustion-of-state-remedies doctrine reflects a policy of federal-state comity to give the state "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Although the exhaustion requirement is not jurisdictional and instead is a matter of comity, *see Granberry v. Greer*, 481 U.S. 129, 133-34 (1987), a federal court generally may not grant relief on an

unexhausted claim, *see* 28 U.S.C. § 2254(b)(1).

Respondent is correct that state court remedies have not been exhausted for the equal protection claim. Mr. Ontiveros' petition filed in the California Supreme Court does not mention an equal protection claim. When this Court encounters an unexhausted claim, this Court usually permits the petitioner to choose whether to dismiss the claim or to seek a stay of the federal action while he returns to state court to attempt to exhaust state court remedies for the claim. That step is not necessary in this case because Mr. Ontiveros already has made clear that he waives the unexhausted equal protection claim to avoid delaying resolution of this case. Accordingly, the Court will dismiss the claim rather than taking the additional step of giving Mr. Ontiveros the option to stay this action while he attempts to exhaust state court remedies for the equal protection claim – as that step would result in a delay in the resolution of this action. The equal protection claim is dismissed because Mr. Ontiveros did not exhaust state court remedies for the claim before presenting it in a federal habeas petition.

B.   Due Process Claim

   1.   Procedural Default Issue

The California Supreme Court imposed a state law procedural bar when it denied Mr. Ontiveros' petition for writ of habeas corpus with a citation to *In re Dexter*, 25 Cal.3d 921, 925, 926 (Cal. 1979) (habeas petitioner must exhaust available administrative remedies before filing state habeas petition). *See* Docket No. 14-6 at 2. The parties disagree as to whether this Court should honor that procedural bar. Respondent argues that the rejection with the citation to *In Re Dexter* means that Mr. Ontiveros' due process claim in that petition is procedurally defaulted. Mr. Ontiveros takes the position that the claim is not procedurally defaulted because he was unable to exhaust administrative remedies due to prison officials' mishandling of his inmate appeals.

As mentioned earlier, if a federal court concludes that an asserted procedural bar was not an independent and adequate ground for the state court's rejection of the claim, the federal court must consider the claim on the merits; if the state courts never reached the merits of the claim, there is no state court decision to which to defer and the federal court must review the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002).

5

1    This Court need not decide whether to honor the *In Re Dexter* procedural bar because, even
2    if the procedural bar is not honored and this Court reaches the merits on a de novo basis as *Pirtle*
3    instructs, Mr. Ontiveros' due process claim fails. That is, his due process claim fails when
4    examined under a de novo review, even without the application of the deferential standard of
5    review set out in § 2254(d).

### 2. The Six-Year Delay Did Not Amount To A Due Process Violation

Mr. Ontiveros urges that prison officials violated his right to due process by assessing a time-credit loss six years after the disciplinary decision on which it was based. His petition does not offer a detailed explanation of his due process theory, and instead seems to urge that delay itself results in a due process violation. While a six-year delay catches one's attention, one must further consider what was delayed. Here, the delay was a record-keeping delay rather than a delay in announcing the punishment to the prisoner. The essential facts for the due process claim are that (a) there was a 130-day loss of credits assessed in 2011 that (b) was not recorded in his Legal Status Summary record until 2017. There are two lines of cases that could guide resolution of the legal claim: the cases about the procedural protections to be afforded in connection with disciplinary proceedings, or the cases about delayed sentencing. Neither leads to victory for Mr. Ontiveros.

#### a. The *Wolff* Protections Do Not Prevent Delayed Punishments

A prisoner has a federal right to due process if he is subjected to a loss of time credits that will affect the duration of his confinement. *See Sandin v. Conner*, 515 U.S. 472 (1995). Here, there was a loss of time credits that will affect the duration of Mr. Ontiveros' confinement on his determinate sentence. The fact that he will spend more time in custody is sufficient to show the deprivation of a liberty interest of a real substance, *see Sandin*, 515 U.S. at 484, such that procedural protections were required as a matter of federal due process.

The procedural protections needed to guard against the erroneous deprivation of a protected liberty interest are set out in federal cases, rather than any more generous procedures that might be allowed under a prison's own rules. *See Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994). For a disciplinary decision, the procedural protections federally required for the

1  hearing include written notice, time to prepare for the hearing, a written statement of decision,
2  allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the
3  accused where the inmate is illiterate or the issues are complex. *Wolff v. McDonnell*, 418 U.S.
4  539, 564-67 (1974). There also must be some evidence to support the disciplinary decision, *see*
5  *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), and the information that forms the basis for the
6  decision must have some indicia of reliability, *see Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir.
7  1987).

8        Mr. Ontiveros has not identified, nor has the Court found, any case holding that the
9  constitutionally required protections include any protection against delays in the imposition of
10 punishment for a disciplinary offense or against delays in the recording of that punishment. The
11 constitutionally required protections do not include any sort of right to immediate imposition of
12 punishment, or immediate recording of the punishment imposed, upon a finding of guilt in a
13 disciplinary proceeding.

14       Moreover, the delayed-punishment claim pressed by Mr. Ontiveros does not seem to be
15 one that would be in the realm of procedural protections that are considered to be constitutionally
16 necessary. In identifying the various procedural protections constitutionally required, the Supreme
17 Court in *Wolff* was striving to determine "those minimum procedures appropriate under the
18 circumstances and required by the Due Process Clause to insure that the state-created right is not
19 arbitrarily abrogated." *Wolff*, 418 U.S. at 557. Mr. Ontiveros does not suggest how a delay in
20 recording the discipline imposed would have caused any arbitrary abrogation of time credits to
21 which he was entitled under state law. The disciplinary decision issued in 2011 specifically stated
22 that 130 days of time credits were being assessed; the 2011 written decision of the disciplinary
23 findings and the discipline imposed prevented the arbitrary abrogation of time credits. Further,
24 Mr. Ontiveros has known since 2011 that a 130-day loss of credits was imposed for the
25 disciplinary offense. Mr. Ontiveros had the right to file an inmate appeal challenging the
26 disciplinary decision or the punishment imposed once the disciplinary decision was issued in 2011
27 but never did so. In sum, the delay in recording the loss of time credits did not violate any
28 procedural protection constitutionally required. *See Walker*, 14 F.3d at 1420 ("Walker's right to

7

due process was violated only if he was not provided with process sufficient to meet the *Wolff* standard").

Mr. Ontiveros also argues that the delay violated due process because the loss of time credits was not approved by the classification committee that met with him in April 2011 after the disciplinary decision was rendered. The Court previously dismissed the state-law error claim regarding that review, and here only considers whether the absence of review by the classification committee violated a federal right to due process. *Wolff* requires that there be a written statement of the evidence relied upon and the reasons for the disciplinary decision, *Wolff*, 418 U.S. at 564, because written records can "protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding" and help insure that administrators will act fairly when faced with possible scrutiny by the public, state officials, and federal courts, *id.* at 565. But the existence of a written record does not guarantee a review. *Wolff* does not clearly establish the right of review in these circumstances Mr. Ontiveros asserts here.

    b.   <u>The Delayed-Sentencing Cases</u>

An "inordinate delay in sentencing" may implicate the Due Process Clause. *Betterman v. Montana*, 136 S. Ct. 1609, 1612 (2016). In *Betterman*, the Supreme Court determined that the Sixth Amendment right to a speedy trial did not apply to the sentencing phase of a criminal prosecution, and did not actually decide whether the Due Process Clause protected the defendant against the lengthy sentencing delay because the petitioner had not preserved that claim for appeal. *Id.* The Supreme Court did, however, observe that "[a]fter conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair." *Id.* at 1617. "Relevant considerations may include the length of and reasons for delay, the defendant's diligence in requesting expeditious sentencing, and prejudice." *Id.* at 1618 n.12. In her concurrence, Justice Sotomayor identified these same factors as the factors from the test in *Barker v. Wingo*, 407 U.S. 514 (1972), that is applied to evaluate claims of violations of the Sixth Amendment speedy trial right. *Betterman*, 136 S. Ct. at 1619 (Sotomayor, J., concurring). None of the four factors are either a necessary or sufficient condition for finding a constitutional deprivation; rather, they must be considered together with such other circumstances

as may be relevant. *See id.* (citing *Barker*, 407 U.S. at 533).

Assuming arguendo that this four-factor test that might apply to a due process claim regarding a criminal sentence also would apply to a due process claim regarding a prison disciplinary decision, Mr. Ontiveros' due process claim fails. There was no delay in imposing the disciplinary sentence – in 2011, the 130-day loss of time credits was imposed. With no delay, there could be no due process violation based on a delay.

Even assuming arguendo that this four-factor test would apply to a due process claim regarding the delay in recording the imposition of a loss of time credits, Mr. Ontiveros' due process claim fails. The first factor is the length of the delay. Here, the six-year was substantial and therefore weighs in favor of Mr. Ontiveros. *Cf. Doggett v. United States*, 505 U.S. 647, 651 n.1 (1992) (for speedy trial claims, depending on the nature of the charges, lower courts generally have found pretrial delay presumptively prejudicial at least as it approaches one year).

The second factor is the reason for the delay. The reason appears to be bureaucratic carelessness: Respondent offers no evidence to the contrary and does not contend that Mr. Ontiveros played any causative role in the six-year delay in recording the loss of time credits. This factor also weighs in Mr. Ontiveros' favor, although not particularly heavily because it was the result of negligence rather than to gain some advantage. *See Barker*, 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.")

The last two factors, however, weigh very heavily against Mr. Ontiveros. The third factor is whether the defendant was diligent in asserting his rights. There is absolutely no evidence of any diligence by Mr. Ontiveros in requesting sentencing, if indeed anything needed to be done to complete sentencing beyond the statement of the disposition in the CDC-115. Mr. Ontiveros received the CDC-115 decision which stated that the disposition included a loss of 130 days of time credits and therefore was on notice of that penalty in 2011. Although the classification committee that met in April 2011 did not discuss the CDC-115 or the loss of time credits, Mr.

1    Ontiveros presents no evidence that he mentioned the matter at the classification committee. And
2    he did not file an inmate appeal in 2011 to protest the disciplinary decision, the discipline
3    imposed, or the purported error in failing to record in his Legal Status Summary the imposition of
4    the loss of time credits (if there was such an error). He slept on his rights, and this weighs very
5    heavily against him. *Cf. Barker*, 407 U.S. at 532 ("We emphasize that failure to assert the right
6    will make it difficult for a defendant to prove that he was denied a speedy trial.").

7    The final factor in the test is prejudice. Mr. Ontiveros makes no effort to show that the
8    delay in recording the loss of time credits in his prison record caused him any prejudice. And the
9    Court cannot see any prejudice under the facts alleged. The real sting of a credit forfeiture
10   typically will be felt at the end of the sentence, as the prisoner spends those lost days in custody
11   rather than at liberty. But the penalty itself is not prejudice for purposes of the *Barker* test –
12   otherwise, every petitioner would be able to satisfy this factor as every petitioner who asserts a
13   claim would have either had a trial he otherwise would not have had (in the speedy-trial claim
14   context) or would have suffered a penalty he otherwise would not have had (in the delayed-
15   sentencing context). In the speedy-trial context, the prejudice might be lost evidence, lost
16   witnesses, or oppressive pretrial incarceration, *see Barker*, 407 U.S. at 532, but none of those
17   things are present here. Mr. Ontiveros was in custody serving a lawful sentence and there was no
18   factfinding to be done (such that there might be a concern about the loss of witnesses or evidence)
19   that would indicate prejudice. He was not going to serve the time covered by the lost time credits
20   until the end of his sentence. He offers no argument or showing that it made any real difference
21   that there was a six-year delay in entering the time-credit loss on his prison record.

22   Even analyzed without the need for the deference required under 28 U.S.C. § 2254, Mr.
23   Ontiveros is not entitled to relief on his claim that his right to due process was violated by the six-
24   year delay in recording his loss of time credits.

25   ///
26   ///
27   ///
28   ///

C.      No Certificate of Appealability

A certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c).  This is not a case in which "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## V.      CONCLUSION

The petition for writ of habeas corpus is **DENIED**.  The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: October 26, 2020

_____
EDWARD M. CHEN
United States District Judge